UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHAEL MIHOK & LINDA MIHOK, : : Plaintiffs, : : v. : : MEDTRONIC, Inc.; MEDTRONIC NEUROMODULATION, a Division of MEDTRONIC, Inc.; MEDTRONIC PUERTO RICO OPERATIONS; GREENWICH HOSPITAL, : : : : : : : Defendants. : | CIVIL NO. AUGUST 13, 2014 |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1331, 1332, 1441 and 1446, Medtronic, Inc. and Medtronic Puerto Rico Operations Company (collectively "Medtronic")[1] respectfully remove this action from the Superior Court of Connecticut, Judicial District of Stamford at Stamford, Docket No. -FST-CV14-6023001-S, to the United States District Court for the District of Connecticut.

In support of removal, Medtronic states the following:

**I.     THE REMOVED CASE**

1.     Plaintiffs Michael Mihok and Linda Mihok ("Plaintiffs") commenced this civil action on July 7, 2014, in the Superior Court of Connecticut, Judicial District of Stamford at Stamford, styled *Michael Mihok & Linda Mihok v. Medtronic, Inc., Medtronic Neuromodulation, Medtronic Puerto Rico Operations, and Greenwich Hospital*, No. FST-CV14-6023001-S.

---

[1] Although Plaintiffs named Medtronic Neuromodulation as a Defendant, Medtronic Neuromodulation is a division of Medtronic, Inc. and is not a separate legal entity.

Plaintiffs served the Summons and Complaint via process server upon Medtronic, Inc. on July 14, 2014.

2.  A true and correct copy of the Complaint and Summons that were served upon Medtronic, Inc. are attached hereto as Exhibit A.  A true and correct copy of the Appearance filed by Day Pitney LLP on behalf of Medtronic is attached hereto as Exhibit B.  A true and correct copy of the Appearance filed by Shipman & Goodwin LLP on behalf of Greenwich Hospital is attached hereto as Exhibit C.  No other pleadings or papers have been filed in this litigation.

3.  This case falls within the Court's original jurisdiction under 28 U.S.C. § 1331 and 1332(a).

4.  As set forth more fully below, Defendant Greenwich Hospital has been fraudulently joined.  For that reason, its consent to removal of this case is not required. 28 U.S.C. § 1446(b)(2)(A) (requiring consent for removal only for defendants "who have been properly joined").

5.  Plaintiffs' allegations sound in products liability and personal injury.  Plaintiffs allege that Mr. Mihok received a SynchroMed II Implantable Infusion System (SynchroMed II Pump) to administer intrathecal baclofen medication to control muscle spasticity caused by his Multiple Sclerosis. (Compl. ¶ 56-58.)  Plaintiffs further allege that a catheter-component of the SynchroMed II Pump "fractured" and caused Plaintiffs' injuries.  (Compl. ¶ 63-72.)  Plaintiffs allege that Mr. Mihok's SynchroMed II Pump was defective.  (*Id.*)

## II.  MEDTRONIC HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.

6. This removal is timely.  Medtronic files this notice within thirty days of July 14, 2014 — the date that Plaintiffs served the Summons and Complaint upon Medtronic.  *See* 28 U.S.C. § 1446(b)(2)(B).

7. Pursuant to 28 U.S.C. § 1446(a), a copy of all process and pleadings served upon Medtronic, Inc. to date is attached.  *See* Exhibit A.

8. The United States District Court for the District of Connecticut is the proper venue for removal under 28 U.S.C. § 1441(a) because it is "the district and division embracing the place where such action is pending," namely, Fairfield County, Connecticut.

9. Pursuant to 28 U.S.C. § 1446(d), written notice of this removal has been provided simultaneously to all parties and the clerk of Superior Court of Connecticut, Judicial District of Stamford at Stamford.

10. The time for the Medtronic Defendants to answer, move, or otherwise plead with respect to the Complaint has not yet expired.

11. By filing a Notice of Removal in this matter, Medtronic does not waive Defendants' rights to object to service of process, the sufficiency of process, jurisdiction over the person, or venue, and Medtronic specifically reserves Defendants' rights to assert any defenses and/or objections to which they may be entitled.  Medtronic demands a jury trial.

## III.  REMOVAL IS PROPER BECAUSE THIS COURT HAS JURISDICTION PURSUANT TO 28 U.S.C. §§ 1331, 1332 AND 1441.

12. As shown below, this case is removable based on federal question jurisdiction under 28 U.S.C. §1331 and, alternatively, based on diversity jurisdiction under 28 U.S.C. § 1332.

**FEDERAL-QUESTION JURISDICTION**

3

13. This case is removable based on federal-question jurisdiction. Under 28 U.S.C. § 1331, the district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

14. Plaintiffs allege that they were injured by Medtronic's SynchroMed II Pump. (Compl. ¶¶ 57-72.) Plaintiffs admit that the SynchroMed II Pump is a Class III, FDA Pre-Market Approved ("PMA") medical device. (Compl. ¶¶ 24-26.) *See also McBride v. Medtronic, Inc.*, No. 13-377, 2013 WL 3491085, at *2 (W.D. La. July 10, 2013) ("[W]e hereby take judicial notice of the FDA information presented by Medtronic verifying that the Synchro[M]ed II [P]ump is a Class III PMA device.").

15. The PMA process is governed by the Medical Device Amendments, which amend the Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq.* The Medical Device Amendments expressly "impose a regime of detailed federal oversight" over medical devices. *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 316 (2008). Depending on the various risks involved with a device, the Medical Device Amendments create different levels of federal oversight. Class III devices like the SynchroMed II Pump, which are "to be for a use in supporting or sustaining human life or for a use which is of substantial importance in preventing impairment of human health…[or] presents a potential unreasonable risk of illness or injury," receive the greatest scrutiny under the PMA process before they are sent to market. *Id.* at 317.

16. "Premarket approval is a 'rigorous' process." *Id.* (citations omitted). The PMA process requires manufacturers to submit detailed information regarding the safety and efficacy of their devices, which the FDA then reviews, spending an average of 1,200 hours on each submission. *Id.* After conducting a thorough cost-benefit analysis, the FDA "grants premarket approval only if it finds there is a 'reasonable assurance' of the device's 'safety and

4

effectiveness.'" *Id.* at 318 (citing § 360c(a)(2)(C)). If approval is granted, "the [Medical Device Amendments] forbid[] the manufacturer to make, without FDA permission, changes in design specifications, manufacturing processes, labeling, or any other attribute, that would affect safety or effectiveness." *Id.* at 319 (citing § 360e(d)(6)(A)(i)). The FDA's involvement with the devices continues even after the PMA is complete, including continued monitoring and regulation of how the product is manufactured, labeled, and marketed, as well as any changes in the design specifications that would affect safety or effectiveness. *Id*. at 319. *See also* 21 C.F.R. § 814.80 (prohibiting the production or labeling of any device in a manner inconsistent with any conditions of approval specified in the approval order); 21 C.F.R. § 814.3a(d) (requiring an applicant to submit a supplemental application setting forth any proposed changes for FDA approval before implementing any changes).

17. Through the PMA process, the FDA is given the final and exclusive authority over the regulation of a Class III device. No state "may establish or continue in effect with respect to a device ... any requirement (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device." 21 U.S.C. § 360k(a). *See also Riegel*, 552 U.S. at 319 (citing 21 U.S.C. § 360e(d)(6)(A)(i)) ("Once a device has received premarket approval, the MDA forbids the manufacturer to make, without FDA permission, changes in design specifications, manufacturing processes, labeling, or any other attribute, that would affect safety or effectiveness."). The Medical Device Amendments also provide that all actions to enforce FDA requirements "shall be by and in the name of the United States." 21 U.S.C. § 337(a). Thus, the FDA has the authority to investigate alleged violations of the Food, Drug and Cosmetic Act and its amendments, and

"has at its disposal a variety of enforcement options that allow it to make a measured response" to any wrongdoing that it uncovers. *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 (2001) (holding that the Federal Government, not private litigants, is exclusively authorized to bring actions under the FDCA).

18. The Medical Device Amendments' preemption provisions have a narrow exception for claims that "'parallel,' rather than add to, federal requirements." *Riegel*, 552 U.S. at 330. However, to be "parallel," a state-law requirement must be "identical" to a federal requirement. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 495 (1996).

19. Here, Plaintiffs allege that Medtronic has violated a laundry list of federal requirements. (*See*, *e.g.*, Compl. ¶¶ 33-55, 81-102.) Specifically, Plaintiffs allege violations of the following federal regulations: 21 C.F.R. §§ 820.30(c), 820.30(g), 820.75(a), 820.70(a), 820.100(a)(2), 820.100(a)(5), 820.100(a)(3), 820.184, 820.50, 803.50, 803.50(a)(1), 806.2(d), 806.10(a)(1), 820.198(a), 820.198(c), 803(c)(2). (*Id.*) Plaintiffs also assert violations of federal statutes, including 21 U.S.C. §§ 351(h) and 360e(d)(6)(A)(i). (Compl. ¶¶ 23, 55.)

20. The Complaint's lengthy recitation of alleged violations of federal law demonstrates that while Plaintiffs' claims against Medtronic are pleaded under state law, each claim (1) is predicated on alleged breaches of duties imposed by *federal* law, (2) challenges the safety and effectiveness of a device subject to exclusive *federal* oversight, and (3) implicates the approval process of a *federal* agency. Indeed, Plaintiffs' make clear in the Complaint that their claim under the Connecticut Product Liability Act is entirely based on Medtronic's alleged violation of the Current Good Manufacturing Practice requirements (CGMPs) found in 21 C.F.R. § 820 *et seq.* (Compl. ¶¶ 78-103.) This is because Plaintiffs cannot bring a "parallel" state-law claim without demonstrating a violation of identical to federal requirements governing the

SynchroMed II Pump that are causally linked to Plaintiffs' alleged injuries. *See Simoneau v. Stryker Corp. et al.*, No. 3:13-CV-1200(JCH), 2014 WL 1289426 (D. Conn. March 31, 2014) (finding a parallel claim where the "predicate violation of a federal requirement has been sufficiently pled").

21. For purposes of federal-question jurisdiction, a claim may arise under federal law in either of two ways. First, "federal-question jurisdiction is invoked . . . by plaintiffs pleading a cause of action created by federal law." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). Second, "federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Id.* This second form of federal-question jurisdiction "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justifiably resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.* Because this case "turn[s] on substantial questions of federal law," this Court has federal-question jurisdiction.

22. When evaluating whether a federal statute creates a substantial federal interest giving rise to federal-question jurisdiction over claims pleaded under state law, the Supreme Court has "disclaimed the adoption of any bright-line rule." *Id.* at 317. "Instead, the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id*. at 314; *see also Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005).

23. By enacting the Medical Device Amendments, Congress both recognized and reinforced a substantial federal interest in the regulation of PMA-approved Class III medical

7

devices. Congress intended the Amendments to "swe[ep] back some state obligations and impose[] a regime of detailed federal oversight." *Riegel*, 552 U.S. at 316. It follows then that Congress would also want to see that litigation over the most complex medical devices, which are subject to the most rigorous and detailed federal oversight, occur in federal court. Indeed, "since Congress 'imposed a regime of detailed federal oversight', it would be nonsensical to prevent such claims [that are based upon the interpretation of federal regulations] to be removed to a federal forum." *H.R. ex rel. Reuter v. Medtronic, Inc.*, No. a:13-CV-859, 2014 WL 554454, at *5-6 (S.D. Ohio 2014) (citations omitted).

24.     For this reason, some federal district courts have recently agreed that cases such as this that necessarily turn on the interpretation of several federal regulations are subject to federal-question jurisdiction. Claims like Plaintiffs' "undoubtedly require this Court to examine federal law, and, even more specifically, examine federal requirements imposed by the FDA through the premarket approval process," and are properly subject to "federal question jurisdiction under the substantial-federal-question doctrine." *Jenkins v. Medtronic, Inc.*, 984 F. Supp. 2d 873, 878, 2013 WL 6172234, at *3 (W.D. Tenn. 2013); *see also Reuter*, 2014 WL 554454, at *5-6 (finding federal-question jurisdiction where plaintiffs alleged that medical device manufacturer did not comply with federal requirements). Just as the Court concluded in *Jenkins*, the federal question raised by Plaintiffs' claims is substantial "because . . . the Court must address an important federal question that deals specifically . . . with federal regulations and requirements regarding a highly regulated medical device." 984 F. Supp. 2d at 881.[2]

---

[2] Because this case involves the Medical Device Amendments and a Class III medical device subject to the PMA process, it is distinguishable from *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804 (1985), which held that the FDCA did not provide a federal forum for misbranding claims against prescription drugs. In a more recent case, the Court reiterated that *Merrell* does not create a bright-line rule. *Grable*, 545 U.S. at 317. The Court also explained that *Merrell* involved the regulation of misbranding on prescription drugs, so "the [*Merrell*] Court treated the combination of no federal cause of action and no preemption of state remedies for misbranding as an important clue to Congress's conception of the scope of jurisdiction." *Id.* at 318. Unlike *Merrell*, however,

25.     Accordingly, this Court has federal question jurisdiction under 28 U.S.C. § 1331, and this case is removable under 28 U.S.C. § 1441.

## DIVERSITY JURISDICTION

26.     This Court also has original jurisdiction over this action pursuant to 28 U.S.C. § 1332.  Diversity jurisdiction exists here where (1) the suit is between *properly joined* citizens of different states, and (2) the amount in controversy exceeds $75,000, exclusive of interest and costs.

### A.  Diversity of Citizenship Exists Between the *Properly Joined* Parties

27.     According to the Complaint, Plaintiffs are both Connecticut citizens. (Compl. ¶ 1.)

28.     Medtronic, Inc. is now, and was at the time Plaintiffs filed this lawsuit, a Minnesota corporation, having its principal place of business in 710 Medtronic Parkway, LC 355, Minneapolis, MN 55432.  Thus, for purposes of determining Medtronic, Inc.'s citizenship under 28 U.S.C. § 1332, it is a citizen of the State of Minnesota.  *See* 28 U.S.C. § 1332(c)(1).

29.     Medtronic Neuromodulation, is now, and was at the time Plaintiffs filed this lawsuit a division of Medtronic, Inc. and not a distinct legal entity from Medtronic, Inc.  As referenced above, Medtronic, Inc. is a citizen of the State of Minnesota.

---

Plaintiffs' claims necessarily invoke the Medical Device Amendments that explicitly preempt state remedies that are "different from or in addition to" federal law. *See* 21 U.S.C. § 360k(a); *see also Wyeth v. Levine*, 555 U.S. 555, 567 (2009) ("when Congress enacted an express pre-emption provision for medical devices in 1976, it declined to enact such a provision for prescription drugs").  In other words, this case involves important issues of federal law that were missing in *Merrell*.  What is more, since "[m]ost new Class III devices enter the market through" what "is known as the § 510(k) process," a far less rigorous process that has not been held to trigger preemption under § 360k(a), there is no danger that exercising federal-question jurisdiction here will open the "flood gates" to federal court. *Riegel*, 552 U.S. at 317.

30.     Medtronic Puerto Rico Operations Company[3] is now, and was at the time Plaintiffs filed this lawsuit, a corporation organized under the laws of the Cayman Islands, having its principal place of business in Puerto Rico.  Thus, for purposes of determining Medtronic Puerto Rico Operations Co.'s citizenship under 28 U.S.C. § 1332, it is a citizen of the Cayman Islands and Puerto Rico.  *See* 28 U.S.C. § 1332(c)(1).

31.     Greenwich Hospital has its principal place of business at 5 Perryridge Road, Greenwich, Connecticut 06830.  Thus, for purposes of determining Greenwich Hospital's citizenship under 28 U.S.C. § 1332, it is a citizen of the State of Connecticut.  *See* 28 U.S.C. § 1332(c)(1).  As more fully described below, however, because Greenwich Hospital has been fraudulently joined in this matter, its citizenship must be disregarded for the purpose of diversity analysis.  28 U.S.C. § 1446(b)(2)(A) (requiring the consent for removal only of those defendants "who have been properly joined").

### 1.     Plaintiffs Fraudulently Joined Greenwich Hospital

32.     "A plaintiff may not defeat a federal court's diversity jurisdiction ... by merely joining as defendants parties with no real connection with the controversy," which is a practice known as "fraudulent joinder."  *Pampillonia v. RJR Nabisco, Inc.,* 138 F.3d 459, 460–61 (2d Cir.1998).  Courts have recognized that it is a "common strategy" in litigation such as this "to name local parties … as defendants," in an attempt to defeat a defendant corporations' "right to remove a case to federal court."  *Legg v. Wyeth,* 428 F.3d 1317, 1322-23 (11th Cir. 2005); *see also In re: Diet Drugs,* 220 F. Supp. 2d 414, 425 (E.D. Pa. 2002) (admonishing plaintiffs for naming sales representative defendants and "engaging in improper efforts to prevent" corporate

---

[3] Plaintiffs' Complaint incorrectly identifies this entity as Medtronic Puerto Rico Co. (Compl. ¶ 4), and the Complaint's caption incorrectly identifies it as Medtronic Puerto Rico Operations.  The correct entity is named Medtronic Puerto Rico Operations Company.

10

defendant from removing cases to federal court); *In re Rezulin Prods. Liab. Litig.,* 133 F. Supp. 2d 272, 286-88 (S.D.N.Y. 2001) (finding fraudulent joinder of resident pharmaceutical sales representative of corporate defendant).  But courts can prevent this tactic.  *Pampillonia*, 138 F.3d at 460-61.

33. "Joinder will be considered fraudulent when it is established 'that there can be no recovery [against the non-diverse defendant] under the law of the state in which the cause is alleged.'"  *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 207 (2d Cir. 2001).  The defendant bears the burden of proving this by clear and convincing evidence, with all factual and legal ambiguities resolved in favor of the plaintiff.  *Id.*

34. Here, Plaintiffs have brought the exact same three claims against all the defendants, including the non-diverse defendant, Greenwich Hospital.  Plaintiffs assert claims under the Connecticut Product Liability Act (CPLA), the Connecticut Unfair Trade Practices Act (CUPTA), and for loss of consortium. (Compl. ¶¶ 78-112.)  However, Plaintiffs' claims are focused singularly upon Medtronic.  Without exception, Plaintiffs' factual allegations relate entirely to the SynchroMed II Pump, the "acts and omissions" of Medtronic, and, despite the headings, all sound in products liability.  Under Connecticut law, Plaintiffs fail to bring a legally cognizable claim against Greenwich Hospital.  As a result, Greenwich Hospital was fraudulently joined, its citizenship must be ignored, and complete diversity exists.

      **a.    Plaintiffs cannot recover from Greenwich Hospital under the Connecticut Product Liability Act.**

35. The CPLA applies only to "product sellers."  Conn. Gen. Stat. Ann. § 52-572n(a).  "To maintain a product liability action under 52–572m *et seq.*, the plaintiff must establish and prove…that the defendant was engaged in the business of selling the product ... [and that] the defect existed at the time of the sale ..."  *Zichichi v. Middlesex Memorial Hospital*, 204 Conn.

11

399, 403, 528 A.2d 805 (1987) (ruling that the hospital was providing a service and was not a "seller" when providing a transfusion of blood to a patient). The statute defines a "'[p]roduct seller' [as] any person or entity, including a manufacturer, wholesaler, distributor or retailer who is engaged in the business of selling such products whether the sale is for resale or for use or consumption." Conn. Gen. Stat. Ann. § 52-572m(a). Put differently, a party is a "product seller" only where "a sale of a product is a principal part of the transaction and where the essence of the relationship between the buyer and seller is *not* the furnishing of professional skill or service[]." *Truglio v. Hayes Constr. Co.,* 66 Conn. App. 681, 685 (2001) (emphasis in original).

36. In an attempt to bring a claim under the CPLA against Greenwich Hospital, Plaintiffs allege that Greenwich Hospital is a "medical device product seller[]" under the CPLA and sold Mr. Mihok a defective SynchroMed II Pump. (Compl. ¶ 78-103.)

37. Despite their bald allegation, Plaintiffs have not pled any specific facts that demonstrate that Greenwich Hospital's role here was that of a "product seller." In their Complaint, Plaintiffs simply allege that Greenwich Hospital "serv[ed] as the party who made the final delivery of the product to the end user, Plaintiff Michael Mihok." (Compl. ¶ 31.) But this allegation describes nothing more than a surgical procedure to implant the SynchroMed II Pump. All other allegations about Greenwich Hospital's alleged "acts and omissions" regarding the SynchroMed II Pump are either (1) boilerplate recitations of claim elements with no supporting factual allegations, or are (2) acts or omissions entirely attributable to Medtronic. (*See e.g.* Compl. ¶ 30(*sic*); 68-72.)

38. Plaintiffs make no allegation that the "essence" of the relationship between them and Greenwich Hospital was anything more than what Mr. Mihok received from the Hospital: surgery and medical care. (Compl. ¶¶ 31, 57, 60.) And both are considered "services" under

12

Connecticut law. *Zbras v. St. Vincent's Medical Center*, 91 Conn. App. 289, 294, 880 A.2d 999, 1000 (2005), *cert. denied*, 276 Conn. 910 (2005) (granting hospital summary judgment on CPLA claims because it was not a "seller" of the medical devices at issue). "Once a particular transaction is labeled a 'service,' as opposed to a 'sale' of a 'product,' it is outside the purview of our product liability statute." *Zichichi*, 204 Conn. 399 at 403. This garden-variety hospital-patient relationship is why "all trial courts that have addressed this issue on summary judgment have found as a matter of law that hospitals, as providers of medical services, rather than sellers of the products and equipment they furnish in the performance of their primary function of health care service, should be deemed exempt from liability under the [CPLA]." *Herrick v. Middlesex Hosp.,* CV030100932, 2005 WL 1760785, at *3 (Conn. Super. Ct. June 27, 2005).[4] *See also O'Dell v. Greenwich Healthcare Services, Inc*., CV116008364S, 2013 WL 2278752 (Conn. Super. Ct. Apr. 25, 2013) ("Following *Zichichi* there have been what appears to be a unanimous chorus of appellate and trial court decisions, either barring product liability claims against hospitals or defining "product" in a manner hospitable to hospitals.").

39.  As such, Plaintiffs cannot recover under the CPLA against Greenwich Hospital.

> **b.  Plaintiffs cannot recover from Greenwich Hospital under the Connecticut Unfair Trade Practices Act.**

40.  Plaintiffs have also alleged a claim under CUTPA against Greenwich Hospital. (Compl. ¶¶ 104-109.) Plaintiffs allege that they "paid a higher price for the [SynchroMed II Pump]" because of the "acts and omissions previously set forth [in the CPLA portion of the

---

[4] The court in *Herrick* acknowledges that other courts have waited until the summary judgment stage to decide whether a hospital is a "product seller" and have denied motions to strike on this issue. But the court explains further that "every case to date in which a hospital-defendant has challenged a complaint brought against it under the [CPLA] by means of a motion for summary judgment at the trial court level has been successful." 2005 WL 1760785, at *3. The facts in this case, as alleged by Plaintiffs, fall squarely into the authority that holds, as a matter of law, that Greenwich Hospital is not a "seller." As a result, there is simply no possibility that Plaintiffs could prevail against Greenwich Hospital under the CPLA.

13

Complaint]." (Compl. ¶¶ 107, 106.) In other words, Plaintiffs' base their CUTPA claim on the same operative facts as their CPLA claim.

41. For two independent reasons, Plaintiffs cannot recover under CUTPA from Greenwich Hospital for their product liability claims. First, the CPLA states in relevant part that it covers "all claims or actions brought for personal injury, death or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of any product." Conn. Gen. Stat. Ann. § 52-572m(b). This means that CPLA is the "exclusive means by which a party may secure a remedy for an injury caused by a defective product." *Gerrity v. R.J. Reynolds Tobacco Co.*, 263 Conn. 120, 126, 818 A.2d 769 (2003). A "CUTPA claim that falls within the scope of the [CPLA]…is precluded and may not be asserted in conjunction with the [CPLA] claim." *Hurley v. Heart Physicians, P.C.*, 278 Conn. 305, 324, 898 A.2d 777 (2006).

42. Here, the alleged "acts and omissions" that make up Plaintiffs' CUTPA claim are precisely the same "acts and omissions" that make up Plaintiffs' CPLA claim. Plaintiffs admit that all of the allegations in the Complaint that underlie its CPLA claim are "repeat[ed] and re-allege[d]" for its CUTPA claim, and Plaintiffs fail to allege any distinguishing facts between the two claims. (Compl. ¶ 104.) Plaintiffs' CUTPA claim is simply a disguised CPLA claim, which can be properly alleged against only a product seller like Medtronic, not a service provider like Greenwich Hospital. *See Hipplewitz v. Ford Motor Co.*, CV054003976, 2006 WL 1230067 (Conn. Super. Ct. Apr. 20, 2006) ("A review of the complaint, as amended, in this case discloses that the relief sought is solely for personal injury caused by the allegedly defective vehicle. This action falls clearly under CPLA, and *Gerrity* counsels striking the CUTPA claim in this case.").

14

43. Based on the facts as pleaded by Plaintiffs, Connecticut law thus bars Plaintiffs from recovering under CUTPA against Greenwich Hospital. *See Gerrity*, 263 Conn. at 128, 818 A.2d at 774 ("[T]he language of the exclusivity provision makes clear that the product liability act was intended to serve as the exclusive remedy for a party who seeks recompense for those injuries caused by a product defect."); *Provost-Daar v. Merz N. Am., Inc.*, CV136037872S, 2014 WL 1193481 (Conn. Super. Ct. Feb. 24, 2014) ("The court concludes that [the CUTPA claim] is legally insufficient in that the plaintiffs have not pleaded sufficient facts in regard to any alleged deliberate misrepresentations by the defendant that resulted in a financial loss to the plaintiffs that is separate from the CPLA claim. In particular, the allegations that the defendant misrepresented the safety risk of the [medical product from the plaintiff's] CPLA claim that the allegedly defective product caused her injuries.").

44. Second, even if Plaintiffs could bring their disguised product liability claims under CUTPA, Plaintiffs have not alleged any particular facts that allow evaluation of their CUTPA claim against Greenwich Hospital. "A claim under CUTPA must be pleaded with particularity to allow evaluation of the legal theory upon which the claim is based." *S.M.S. Textile Mills, Inc. v. Brown, Jacobson, Tillinghast, Lahan & King, P.C.*, 32 Conn. App. 786, 797, 631 A.2d 340, 346 (1993). And with regard to healthcare defendants, Plaintiffs must allege "that an entrepreneurial or business aspect of the provision of services is implicated, aside from medical competence or aside from medical malpractice based on the adequacy of staffing, training, equipment or support personnel." *Haynes v. Yale-New Haven Hosp.*, 243 Conn. 17, 38, 699 A.2d 964, 974 (1997). No such particular facts appear in Plaintiffs' Complaint.

45. Plaintiffs allege in a conclusory manner that "the Defendants' misrepresentations and nondisclosures" caused them to pay "a higher price for the product." (Compl ¶ 107.) Yet

15

there is not a single allegation in the Complaint specifying what particular "misrepresentations and nondisclosures" are attributable to Greenwich Hospital. As detailed above, Plaintiffs direct all of their specific factual allegations related to "misrepresentations and nondisclosures" at Medtronic. (*See e.g.* Compl ¶¶ 33-55.) Because Plaintiffs offer no particularized facts pertaining to Greenwich Hospital that could support a claim under CUPTA, Plaintiffs thus fail to allege a cognizable CUTPA claim against Greenwich Hospital.

46. As such, Plaintiffs cannot seek any recovery under CUTPA against Greenwich Hospital.

### c. **Plaintiffs cannot recover from Greenwich Hospital for loss of consortium.**

47. Loss of consortium claims are derivative of the underlying claims and a "loss of consortium claim 'is lost, diminished or barred when the injured person's claim is so affected.'" *Voris v. Molinaro*, 302 Conn. 791, 799-800, 31 A.3d 363, 368 (2011). Because Plaintiffs do not state any possibility of a claim against Greenwich Hospital under the CPLA or CUTPA, Plaintiffs' loss of consortium claims necessarily fails as well.

48. As such, Plaintiffs cannot seek any recovery for loss of consortium against Greenwich Hospital.

### d. **Plaintiffs cannot recover against Greenwich Hospital on any claim.**

49. As detailed above, Plaintiffs have no viable claim against Greenwich Hospital. All of Plaintiffs' claims sound in product liability and personal injury, and they direct all of their operative allegations at Medtronic. Since the CPLA is the exclusive avenue through which Plaintiffs must bring these kind of claims, Plaintiffs can bring their CPLA claims, if at all, only against Medtronic. And Plaintiffs cannot work around the CPLA's exclusivity provision by

16

disguising their CPLA claim as a CUTPA claim. Consequently, Plaintiffs have no avenue through which they can possibly recover from Greenwich Hospital and have thus fraudulently joined the Hospital.

**B. The Amount-in-Controversy Requirement is Satisfied.**

50. "Courts generally determine the amount in controversy by reference to the plaintiff's complaint." *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 638 (4th Cir. 2010).

51. Here, it is facially apparent from Plaintiffs' Complaint that the value of their claims exceeds $75,000.

52. In particular, Plaintiffs allege that Mr. Mihok maintained "a highly successful job at Pepsico" in 2006. (Compl. ¶ 56.) Plaintiffs further allege that as a result of a "defective catheter…Mr. Mihok experienced terrible pain and lost considerable function of his upper body including his arms and hands. Mr. Mihok can [no] longer work and has lost what autonomy his [multiple sclerosis] had stripped from him." (Compl. ¶ 65.) Plaintiffs further allege that Mr. Mihok "suffered serious and permanent personal injuries due to the defective devices." (Compl. ¶ 67.)

53. Courts nationwide routinely hold that cases that allege serious physical injuries, such as the serious physical injuries alleged here by Plaintiffs, satisfy the amount-in-controversy requirement. *See Allen v. Ruby Tuesday, Inc.*, No. 3:06cv149, 2006 WL 2790431, *3 (D. Conn. Sept. 26, 2006) (finding reasonable probability that amount in controversy satisfied where plaintiff did not specify an amount in controversy but alleged multiple severe and permanent injuries); *see also Felipe v. Target Corp.*, 572 F. Supp. 2d 455, 458-59 (S.D.N.Y. 2008) (finding that the plaintiff's vague claims about severe and serious personal injuries demonstrated a reasonable probability that the amount in controversy was met); *In re Rezulin Prods. Liab. Litig.*,

133 F. Supp. 2d 272, 295-96 (S.D.N.Y. 2001) (holding that amount in controversy was satisfied where plaintiffs alleged economic loss, medical and health expresses, and serious medical injuries).

54. Accordingly, this Court has diversity jurisdiction under 28 U.S.C. § 1332, and this case is removable under 28 U.S.C. § 1441.

**IV. CONCLUSION**

55. This civil action involves substantial federal questions and features complete diversity of citizenship between the Mihoks (the only plaintiffs) and Medtronic (the only properly joined defendants). The Mihoks are citizens of the State of Connecticut, while Medtronic is not. In addition, the amount in controversy exceeds the sum of $75,000. For these reasons, this case is subject to this Court's original jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446. Medtronic hereby removes the above-captioned action to the United States District Court for the District of Connecticut.

DEFENDANTS, MEDTRONIC, INC. AND
MEDTRONIC PUERTO RICO OPERATIONS
COMPANY,

By: /s/ *James H. Rotondo*

James H. Rotondo (ct05173)
Kaitlin A. Canty (ct29074)
Day Pitney LLP
242 Trumbull Street
Hartford, Connecticut 06103-1212
(860) 275-0100
(860) 275-0343 (fax)
jhrotondo@daypitney.com
kcanty@daypitney.com

Joe W. Tomaselli, Jr.
TX Bar No. 24003064 (pro hac vice to be filed)
Shayna S. Cook
IL Bar No. 6285959 (pro hac vice to be filed)

Andrew J. Rima
IL Bar No. 6302849 (pro hac vice to be filed)
GOLDMAN ISMAIL TOMASELLI BRENNAN & BAUM LLP
564 West Randolph Street, Suite 400
Chicago, IL 60661
(312) 681-6000
(312) 881-5191
jtomaselli@goldmanismail.com
scook@goldmanismail.com
arima@goldmanismail.com

*Attorneys for Medtronic, Inc. and Medtronic Puerto Rico Operations Company*

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Notice of Removal was served by the Court's ECF system and by first-class United States Mail, postage prepaid, this 13th day of August, 2014, addressed to:

Jacqueline E. Fusco
Tooher Wocl & Leydon LLC
80 Fourth Street
Stamford, CT 06905

*Attorneys for Michael Mihok and Linda Mihok*

Christopher R. Drury
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06103
*cdrury@goodwin.com*

*Attorneys for Greenwich Hospital*

By: /s/ Kaitlin A. Canty
Kaitlin A. Canty (ct29074)